1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10    DELIAN BREWER,

11              Petitioner,                    No. CIV S-02-312 MCE CHS P

12         vs.

13    DARREL G. ADAMS, et al.,

14              Respondents.          FINDINGS AND RECOMMENDATIONS

15    _____/

16    I.    INTRODUCTION

17              Petitioner Delian Brewer is a state prisoner, proceeding with appointed counsel,

18    with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner attacks his

19    October 2, 1997 convictions for second degree murder, attempted murder, attempted robbery and

20    robbery in the Sacramento County Superior Court, Case Nos. 95F02656 and 95F07371.

21    II.   ISSUES

22              Petitioner makes the following claims:

23         A.    Petitioner received ineffective assistance of trial counsel;

24         B.    Petitioner's right to due process was violated by jury instruction error;

25         C.    Petitioner received ineffective assistance of appellate counsel;

26         D.    Petitioner's right to due process was violated by joinder of cases; and

1

E.       Petitioner's sentence violated his right to due process.

Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's petition for habeas corpus relief be denied.

III.     FACTUAL AND PROCEDURAL BACKGROUND

A.       Commitment Offense

No court summary of the facts in this matter exists. The facts below are taken from the October 31, 1997 Probation Officer Report and Recommendation, lodged with respondent's Answer. Neither petitioner or respondent has objected to this report and there was no objection to its factual summary at the sentencing hearing. See RT 1754-57.

1)       February 1995 Murder and Attempted Robbery:

On February 3, 1995, SPD officers responded to 11th Avenue and Riverside Boulevard regarding a possible shooting. Upon arrival, officers located Victim #1 leaning against a telephone pole with approximately four to six witnesses attending to him. Victim #1, who had suffered a gunshot wound to the back of the head, was conscious but stated he could not see. He was subsequently transported to U.C.D. Medical Center where he underwent medical treatment. Officers were informed the victim had stated a friend of his was also shot somewhere in the park. Officers drove through William Land Park and located the victim's vehicle parked, with the trunk open. Officers looked into the vehicle and in the passenger seat located Victim #2, who was bleeding from the head area and appeared to be dead. Victim #2 was transported to the U.C.D. Medical Center where he was pronounced dead.

Subsequent investigation revealed earlier that day, Victim #2 had contacted [co-defendant] Kufa, indicating he wanted to buy several ounces of methamphetamine. Kufa put him in contact with his cousin, defendant Brewer, who subsequently set up a "deal" with Victim #2. Just prior to the shooting, the defendants drove to West Sacramento to meet up with the victims at a Carl's Jr. After the victim arrived at Carl's Jr., Brewer contacted Victim #2 and gave him a package containing several ounces of methamphetamine. Victim #2 indicated it was "not safe" and wanted the defendants to drive with them while they "weighed the stuff out." The defendants entered the victim's vehicle with Kufa sitting in the back seat behind Victim #1, and Brewer sitting in the back seat behind Victim #2. The victims left the area, got on the freeway and exited at the William Land Park exit. During the short drive, Victim #2 displayed a handgun to the defendants and asked if they were interested in buying it. The defendants declined, indicating

2

they each had their own guns.  Victim #2 then made reference to selling bullet proof vests, which the defendants also declined to purchase.  As Victim #1 entered William Land Park, Victim #2 apparently made furtive movements, which prompted Brewer to pull out his gun and shoot Victim #2 in the back of [the] head (Count 1 with 12022.5(a) P.C., Found True).  As Victim #2 slumped over, Kufa placed a gun to the back of Victim #1's head, who then placed his hands in the air and begged the defendants not to shoot him.  Brewer reached over the front seat and slammed the gear shift into park, halting the vehicle.  Brewer then placed his gun to Victim #1's head and demanded to know where the money was.  Victim #1 indicated the money might be in the trunk, and while Kufa held his gun to Victim #1's head, Brewer exited the vehicle and opened the trunk (Count 3, with 12022.5(a) P.C., Found True).  When he did not find any money, Brewer returned to the driver's side and demanded Victim #1 exit the vehicle.  As Victim #1 exited the vehicle, he grabbed for Brewer's gun and during the struggle, Brewer yelled to Kufa to shoot him.  Kufa then raised his gun and shot Victim #1 in the back of the head (Count 2, with 12022.2(a) P.C. Found True).  As Victim #1 fell to the ground unconscious, the defendants ran off.

At some point in time, Victim #1 regained consciousness, but realized he could not see.  The victim stumbled through William Land Park and onto [] Riverside Boulevard, where witnesses responded after hearing the victim cry for help.

On March 23, 1995, following a lengthy investigation, which included positive identification by the victim, and finger print identification, the defendants were arrested for violation of section 187(a) P.C., 664/187(a) P.C., and 664/221 P.C. and transported to the Sacramento County Main Jail for booking.

2)      The November 1994 Robbery Charges:

On November 9, 1994, officers responded to an apartment complex on Marconi Avenue, regarding a shooting.  Officers contacted Victim #1 who stated he was in his living room watching TV with his girlfriend, when they heard a loud bang at the door.  Following a second loud bang, the door burst open and three male blacks, dressed in black, with ski masks, entered the residence yelling, "Get down mother fucker!"  One of the individuals, possibly the second one through the door, shot at Victim #1 as he raised his hands to his face.  The bullet struck Victim #1's left hand and left shoulder.  Victim #2 then ran to the back bedroom where her 16-month old child and 14-year-old brother were asleep.

The suspects then demanded Victim #1 give them all the money he had and dragged him into the master bedroom where the victim's safe was.  As they held a gun on Victim #1 and his child, Victim #2 was instructed to open the safe.  After removing approximately

3

$1,000 from the safe, all three individuals left the apartment in an unknown direction (Count 4 and 5, with 12022.5(a) P.C., Found True).  Victim #2 indicated she recognized at least one of the individuals, known as "Jr."  She thought the second individual's name was "Delian" and the third, who went by a street name of "Snoop."  She states all three individuals were cousins from the Oakland area and they had been to their house several times in the past six months for barbecues.

/////

Answer, Lodged Document 6 at 671-74 (Probation Officer's Report).  A jury found petitioner guilty on all counts.  Answer, Lodged Doc. 12, Clerk's Transcripts at 1745-48.  The trial judge sentenced petitioner to an indeterminate term of 35 years to life in prison, plus a consecutive determinate term of 30 years and four months.  Id. at 1747-48.

       B.    Post Trial Proceedings

         1)    State Appellate Proceedings

Petitioner filed a petition for review with the California Court of Appeal on April 13, 1998.  Answer, Lodged Doc. 13.  That petition was denied on January 4, 1999.  Answer, Lodged Doc. 16 at 1.  Petitioner then petitioned the California Supreme Court which denied that petition on March 17, 1999.  Answer, Lodged Doc. 16.

         2)    Habeas Corpus Proceedings

On June 21, 2000 petitioner filed a petition for writ of habeas corpus with the Sacramento County Superior Court.  Answer, Lodged Doc. 2.  That court denied that petition on July 11, 2000.  Answer, Lodged Doc. 3 at 1.  Petitioner then petitioned the California Court of Appeal on August 24, 2000.  Answer, Lodged Doc. 17.  That petition was denied on September 28, 2000.  Answer, Lodged Doc. 18.  Petitioner again petitioned the California Supreme Court on July 16, 2001.  Answer, Lodged Doc. 19.  That petition was denied on January 29, 2002.  Answer at 2.  Petitioner filed this federal petition on February 7, 2002.

IV.    APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

1   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

2   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

3   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

4   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

5   corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

6   (1972).

7        This action is governed by the Antiterrorism and Effective Death Penalty Act of

8   1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

9   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

10  habeas corpus relief:

11          An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall
12          not be granted with respect to any claim that was adjudicated on
            the merits in State court proceedings unless the adjudication of the
13          claim -

14          (1) resulted in a decision that was contrary to, or involved
            an unreasonable application of, clearly established Federal law, as
15          determined by the Supreme Court of the United States; or

16          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
17          State court proceeding.

18  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

19  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  When

20  it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the

21  claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal

22  habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.

23  2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

24  /////

25  /////

26  /////

5

1    V.    PETITIONER'S CLAIMS

2          A.    Ineffective Assistance of Trial Counsel

3                1)    Description of Claim

4                Petitioner claims he received ineffective assistance of trial counsel.  Specifically,

5    petitioner claims that his trial counsel's presentation of an alibi defense for the February 1995

6    murder, instead of the defense of unreasonable self-defense, was constitutionally inadequate

7    because his counsel knew testimony by co-defendant Kufa and Victim #1 would fatally

8    undermine an alibi defense.  Petition at 34-37.

9                After Kufa and Victim #1 testified that petitioner was at the crime scene trial

10   counsel abandoned the alibi defense.  Id.  Petitioner felt compelled to testify and admit that he

11   shot Victim #2 because he believed Victim #2 was going to shoot him.  Id. at 33-35.  Petitioner

12   believes that changing his defense mid-trial ruined his credibility with the jury.  Id.

13               2)    Applicable Law

14               The Sixth Amendment guarantees the effective assistance of counsel.  The United

15   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

16   Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

17   counsel, a petitioner must first show that, considering all the circumstances, counsel's

18   performance fell below an objective standard of reasonableness.  Id. at  687-88.  After a

19   petitioner identifies the acts or omissions that are alleged not to have been the result of

20   reasonable professional judgment, the court must determine whether, in light of all the

21   circumstances, the identified acts or omissions were outside the wide range of professionally,

22   competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  In assessing an

23   ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's

24   performance falls within the 'wide range of professional assistance.'"  Kimmelman v. Morrison,

25   477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There is in addition a strong

26   presumption that counsel "exercised acceptable professional judgment in all significant decisions

6

made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

3)   Discussion

"When reviewing ineffective assistance of counsel claims that question the attorney's trial strategy, it is important to 'note that a defendant's Sixth Amendment rights are his alone, and that trial counsel, while held to a standard of 'reasonable effectiveness,' is still only an *assistant* to the defendant and not the master of the defense.'" Pinholster v. Ayers, 525 F.3d 742, 760 (9th Cir. 2008) (quoting Mulligan v. Kemp, 771 F.2d 1436, 1441 (11th Cir. 1985). Trial counsel, and the reasonableness their trial strategy, depend critically "on informed strategic choices made by the defendant and on information supplied by the defendant." Strickland, 466 U.S. at 691.

The record indicates petitioner supplied his trial counsel with evidence supporting his alibi defense. Specifically, on cross examination petitioner admitted to recruiting people to lie in support of his alibi defense.

> Q.   Mr. Brewer, I just want to make sure I've got this straight, okay? Up until yesterday, up until the time when Mr. Kufa hit the stand and implicated you in this crime, you were going to go with an alibi defense; is that right?

7

1      A.      That's correct.

2      Q.      Okay.  You were perfectly content to let friends of yours
               come in here and commit felony perjury, which they can go
3              to prison for, so that you would get off on these murders; is
               that correct?
4

5      A.      That's correct.

6      Q.      Today you are saying that the reason you shot him was
               because you thought he was going to do harm to you?

7      A.      That is right.

8      Q.      Now, this alibi defense you had, you put some work into, is
               that correct?
9

10     A.      That is right.

11     Q.      You had a whole bunch of recruits that were going to come
               in for you; is that right?

12     A.      That is right.

13     Q.      Six, seven people at least?

14     A.      Yeah.

15  RT at 1379-80.  While petitioner blames only his trial counsel, there is no claim that his trial

16  counsel encouraged him to recruit witnesses to commit perjury.  Petitioner's recruiting suggests

17  that he at least encouraged an alibi defense if not insisted upon it.

18          Even assuming petitioner did not insist upon an alibi defense, he concedes that his

19  trial counsel may have believed Kufa would not testify and implicate petitioner.[1]  Petition at 30.

20  While it is easy to use hindsight to critically evaluate that judgment, to do so would be unfair to

21  trial counsel.  See Rompilla v. Beard, 545 U.S. 374, 381 (2005) ("In judging the defense's

22  investigation, as in applying Strickland generally, hindsight is discounted by pegging adequacy

23  to counsel's perspective at the time investigative decisions are made and by giving a heavy

24  measure of deference to counsel's judgments." (internal quotation marks and citation omitted)).

25  _____

26      [1] Petitioner also admitted to attempting to intimidate Mr. Kufa into changing his
    statement to support petitioner's alibi defense.  RT at 1290.

8

Petitioner, however, argues that his trial counsel's judgment was inadequate because he failed to conduct a reasonable investigation into whether petitioner had information to support a defense of unreasonable self-defense. Petition at 45.

Certainly defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. However, where an attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, his or her performance is not constitutionally deficient. See Siripongs v. Calderon II, 133 F.3d 732, 734 (9th Cir. 1998); Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998); Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995). "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances.'" Wiggins, 539 U.S. at 533 (quoting Strickland, 466 U.S. at 691). See also Kimmelman, 477 U.S. at 385 (counsel "neither investigated, nor made a reasonable decision not to investigate"); Babbitt, 151 F.3d at 1173-74. A reviewing court must "examine the reasonableness of counsel's conduct 'as of the time of counsel's conduct.'" United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting Strickland, 466 U.S. at 690). Furthermore, "'ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.'" Bragg, 242 F.3d at 1088 (quoting Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986)).

Here, the state's case strengthened dramatically as a result of Kufa's testimony. Without  Kufa's testimony, the strongest evidence against petitioner was the testimony of the surviving victims and the fingerprint evidence. Without Kufa's testimony petitioner's trial counsel may have believed that his best defense was to deny being at the scene.

As a co-defendant, it was not certain that Kufa would testify and implicate himself and petitioner. Without such testimony, trial counsel could have attacked Victim #1's identification and the fingerprint evidence. While that may not be the strongest defense, it is not an unreasonable one.

1    Petitioner's alibi defense would only be strengthened by the presentation of the

2  multiple alibi witnesses petitioner arranged.  Faced with conflicting testimony, a jury may have

3  found reasonable doubt.  Such a finding would have provided petitioner a defense to all charges

4  relating to the 1995 murder.  Unfortunately for petitioner, Kufa did testify and petitioner's alibi

5  defense was destroyed.  Nevertheless, the failure of the defense was not a result of counsel's

6  failure to investigate, but instead a result of Kufa's testimony and petitioner's admission that he

7  arranged for witnesses to commit perjury.

8    Whether petitioner insisted on an alibi defense, or his counsel believed the

9  defense to be in petitioner's best interest, trial counsel's performance did not fall below an

10  objective standard of reasonableness.  Petitioner is not entitled to relief on this claim.

11    B.    Jury Instruction Error

12      1)    Description of Claim

13    Petitioner claims his right to due process was violated by the trial judge's error in

14  instructing the jury.  Specifically, petitioner claims that the trial judge misread CALJIC No. 8.21

15  to the jury as:

16 The unlawful killing of a human being, whether intentional,
   unintentional or accidental which occurs during the commission or
17 attempted commission of the crime of robbery is murder of the
   first degree, <u>whether</u> the perpetrator had the specific intent to
18 commit that crime.

19  Petition at 50.  The actual instruction reads:

20 The unlawful killing of a human being, whether intentional,
   unintentional or accidental which occurs during the commission or
21 attempted commission of the crime of robbery is murder of the
   first degree <u>when</u> the perpetrator had the specific intent to commit
22 that crime.

23  <u>Id.</u>  Petitioner argues that the erroneous oral instruction may have removed from the jury's

24  deliberations the requirement that petitioner had the intent to commit robbery when the killing

25  occurred.  <u>Id.</u> at 44.

26  /////

1                    2)     Applicable Law

2            In general, a challenge to jury instructions does not state a federal constitutional

3    claim.  Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S.

4    107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant

5    federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or

6    even "universally condemned,"' but must violate some due process right guaranteed by the

7    fourteenth amendment."  Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp

8    v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail on such a claim the instruction must be

9    more than simply erroneous; "rather the petitioner must establish that there was a reasonable

10   likelihood that the jury applied the instruction in a way that violated a constitutional right."

11   Carriger v. Lewis, 971 F.2d 329, 334 (9th Cir. 1992).  In making its determination, this court

12   must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as

13   a component of the entire trial process.'"  Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730

14   F.2d 1228, 1239 (9th Cir. 1984)).

15                    3)     Discussion

16           Immediately after the trial judge incorrectly read "when" as "whether" he

17   instructed the jury that "[t]he specific intent to commit robbery and the commission or attempted

18   commission of such crime must be proved beyond a reasonable doubt."  RT at 1717.  The judge

19   went on to inform the jury that they would be provided written instructions and that the jury was

20   to be "governed by the instruction in its final wording."  RT at 1734.

21           The trial judge then issued the jury accurate written instructions, reflecting the

22   correct wording of CALJIC No. 8.21.  CT at 618; petition at 51.  Under California law, it is the

23   written jury instructions that controls in a conflict with instructions received orally.  People v.

24   Osband, 13 Cal. 4th 622, 717 (Cal. 1996).  After deliberations, the jury reached their verdict.  CT

25   at 448-50.

26   /////

1    There is no dispute that the jury was provided accurate written instructions.

2    There is no evidence that the jury was confused by the misreading or applied an erroneous

3    standard.  There is no claim or evidence that the jury's verdict is in anyway inconsistent.  The

4    only support for petitioner's claim is his concern that "the oral instruction may very well have

5    had the effect of removing from the jury's consideration the requirement that, for purposes of

6    felony murder, petitioner had to have the intent to commit robbery when the killing occurred."

7    Petitioner has not established that there is a reasonable likelihood that the jury

8    applied the instruction in a way that violated a constitutional right.  Petitioner therefore is not

9    entitled to relief on this claim.

10    C.    Ineffective Assistance of Appellate Counsel

11        1)    Description of Claim

12    On appeal, petitioner's appellate counsel did not raise the claim concerning the

13    trial judge's error in orally instructing the jury.  Petitioner argues that as a result of this failure,

14    he received ineffective assistance of appellate counsel.  Petition at 52.

15        2)    Applicable Law

16    The Strickland standards apply to appellate counsel as well as trial counsel.

17    Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.

18    1989).  However, an indigent defendant "does not have a constitutional right to compel

19    appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

20    professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

21    (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

22    ability of counsel to present the client's case in accord with counsel's professional evaluation

23    would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

24    Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

25    not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

26    meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

12

1    showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

2    to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

3    context, petitioner must show that, but for appellate counsel's errors, he probably would have

4    prevailed on appeal.  Id. at 1434 n.9.

5              3)      Discussion

6              Petitioner's appellate counsel may have rightfully characterized petitioner's claim

7    concerning the jury instruction as weak or meritless.  Appellate counsel is not obligated to raise

8    weak or  meritless claims on behalf of a client.  Despite petitioner's assertion, he has not shown

9    that but for appellate counsel's failure to raise the claim, there is a reasonable probability he

10   would have prevailed on appeal.  Petitioner has therefore failed to demonstrate prejudice with

11   respect to this claim and is not entitled to relief.

12        D.    Joinder

13              1)      Description of Claim

14              Petitioner claims that the joinder of his trial for the 1995 homicide related charges

15   with the 1994 home invasion robbery offenses "rendered petitioner's trial fundamentally unfair."

16   Petition at 54.  Petitioner argues that the state court's determination that joinder was proper was

17   an unreasonable application of clearly established federal law.  Id.

18              2)      Applicable Law

19               A court may grant habeas relief based on a state court's decision to deny a motion

20   for severance only if the joint trial was so prejudicial that it denied a petitioner his right to a fair

21   trial.  Zafiro v. United States, 506 U.S. 534, 538-39 (1993) (court must decide if "there is a

22   serious risk that a joint trial would compromise a specific trial right of one of the defendants, or

23   prevent the jury from making a reliable judgment about guilt or innocence"); United States v.

24   Lane, 474 U.S. 438, 446 n.8 (1986) ("misjoinder would rise to the level of a constitutional

25   violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right

26   to a fair trial"); Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991) (same); see also

13

1   Comer v. Schiro, 480 F.3d 960, 985 (9th Cir.) (in the context of the joinder of counts at trial,

2   habeas relief will not be granted unless the joinder actually rendered petitioner's state trial

3   fundamentally unfair and therefore violative of due process), cert. denied, ___U.S.___, 127 S.

4   Ct. 2455 (2007).  Petitioner bears the burden of proving that the denial of severance rendered his

5   trial fundamentally unfair,  Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997), and must

6   establish that prejudice arising from the failure to grant a severance was so "clear, manifest, and

7   undue" that he was denied a fair trial.  Lambright v. Stewart, 191 F.3d 1181, 1185 (9th Cir.

8   1999) (quoting United States v. Throckmorton, 87 F.3d 1069, 1071-72 (9th Cir. 1996)).

9           On habeas review, federal courts neither depend on the state law governing

10   severance, Grisby, 130 F.3d at 370 (citing Hollins v. Dep't of Corrections, State of Iowa, 969

11   F.2d 606, 608 (8th Cir. 1992)), nor consider procedural rights to a severance afforded

12   to criminal defendants in the federal criminal justice system.  Id.  Rather, the relevant question is

13   whether the state proceedings satisfied due process.  Id.; see also Cooper v. McGrath, 314

14   F. Supp. 2d 967, 983 (N.D. Cal. 2004).

15   /////

16           3)   Discussion

17           Petitioner has not proven that the trial court's joinder of the two matters rendered

18   his trial fundamentally unfair.  Though petitioner argues that the jury was more likely to be

19   inflamed after learning he may have committed a home invasion robbery of people he knew, they

20   were just as likely to be inflamed upon learning that he may have murdered a man over a drug

21   deal.  Neither charge was more inflammatory than the other to a degree that would prevent the

22   jury from fairly evaluating the evidence.  Not only are the two matters equally inflammatory, but

23   the evidence of petitioner's guilt in both matters was compelling.

24           In the 1994 home invasion robbery petitioner had no alibi and was positively

25   identified by the victims, with whom he had previously socialized.  In the 1995 murder, the jury

26   was presented with testimony from a surviving victim, petitioner's co-defendant, and petitioner.

1  There was no need for the jury to aggregate evidence in one matter to support conviction in the

2  other.

3          Petitioner has not met his burden of proof that his trial was fundamentally unfair

4  and is not entitled to relief on this claim.

5          E.      Sentence Violated Due Process

6                  1)      Description of Claim

7          Petitioner argues that his sentence is unconstitutional because factual findings

8  used by the trial judge to impose upper term and consecutive sentences were not admitted by

9  petitioner or proved beyond a reasonable doubt to a jury.  Petition at 50.  Petitioner argues that

10 California's determinate sentencing scheme violates the Supreme Court's decision in Blakely v.

11 Washington, 542 U.S. 296 (2004) which held that any fact other than a prior conviction used to

12 increase a defendant's sentence beyond the statutory maximum must be proved beyond a

13 reasonable doubt by a jury.  Petition at 59-65.

14                 2)      Applicable Law

15         The Sixth Amendment to the United States Constitution guarantees a criminal

16 defendant the right to a trial by jury and is applicable to state criminal proceedings through the

17 Fourteenth Amendment.  Duncan v. Louisiana, 391 U.S. 145, 149-150 (1968).  In Apprendi v.

18 New Jersey, 530 U.S. 466 (2000), the United States Supreme Court clarified a defendant's rights

19 under the Sixth Amendment by extending the right to trial by jury to any fact finding used to

20 make enhanced sentencing determinations above the statutory maximum for an offense.

21 Subsequently, in Blakely v. Washington, the Supreme Court held that " '[o]ther than the fact of a

22 prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

23 maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"  Blakely, 542

24 U.S. at 301 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)); accord Cunningham v.

25 California, 549 U.S. 270, 247-75 (2007).  "[S]tatutory maximum" means "the maximum

26 sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or*

1   *admitted by the defendant."* <u>Blakely</u>, 542 U.S. at 303 (emphasis in original) (citations omitted).

2          Under California's determinate sentencing law ("DSL"), "[t]he statute defining

3   the offense prescribes three precise terms of imprisonment-a lower, middle, and upper term

4   sentence." <u>Cunningham</u>, 549 U.S. at 277.  Because "an upper term sentence may be imposed

5   only when the trial judge finds an aggravating circumstance," the DSL's middle term is "the

6   relevant statutory maximum." <u>Id</u>. at 289.  In <u>Cunningham</u>, the Supreme Court, citing <u>Apprendi</u>

7   and <u>Blakely</u>, held that California's DSL violates a defendant's right to a jury trial to the extent it

8   permits a trial court to impose an upper term based on facts found by the court rather than by a

9   jury. <u>Id</u>. at 293-94.

10          3)   <u>Discussion</u>

11          With respect to the imposition of the upper term, under California's Determinate

12   Sentencing Law at the time petitioner was sentenced, the trial court was statutorily directed to

13   impose the middle term of three possible terms (upper, middle and lower), unless there were

14   circumstances in aggravation or mitigation of the crime.  Cal. Penal Code §1170(b) (1998); <u>see</u>

15   <u>also</u> Cal. R. Ct. 4.420, 4.421, 4.423 (1977).  Under the rules, circumstances in aggravation and

16   mitigation must be established by a preponderance of the evidence, and selection of the upper

17   term was justified only if, after consideration of all relevant facts, the circumstances in

18   aggravation outweigh the circumstances in mitigation.  Cal. R. Ct. 4.420(b).  The Rules also

19   specified a non-exhaustive list of aggravating and mitigating factors, including factors relating to

20   the crime and to the defendant.  Cal. R. Ct. 4.421, 4.423.

21          The trial court identified six circumstances supporting the imposition of the upper

22   term.  (RT at 1759).  The trial court found that pursuant to:

23                  Rule 421(a)(1), the crime involved a high degree of cruelty
            and viciousness, in that the victims were shot in the back of the
24            head at point-blank range;

25                  Rule 421(a)(8), the manner in which the crimes were
            carried out indicates planning, sophistication, and professionalism;

26

Rule 421(b)(1), the defendant has engaged in violent conduct which indicates a serious danger to society;

Rule 421(b)(2), the defendant's prior sustained petitions in juvenile delinquency proceedings are numerous and of a serious nature;

Rule 421(b)(4), the defendant was on parole from the California Youth Authority when the crime was committed; and

Rule 42(b)(5), the defendant's prior performance on parole was unsatisfactory, in that he was returned to the California Youth Authority for a parole violation, and, upon his second release, was absent without leave.

/////

Id. After concluding that the circumstances in aggravation outweighed the circumstance in mitigation, the trial court imposed the upper base term and enhancements for Counts 1, 2, 4, and 5. Id. Under these facts it appears that petitioner's sentence violates Cunningham. Such a finding however does not end the analysis.

Under Brecht v. Abrahamson, 507 U.S. 619 (1993), the ultimate issue is whether "the error had a substantial and injurious effect on [petitioner's] sentence." Butler v. Curry, 528 F.3d 624, 648 (9th Cir. 2008) (quoting Hoffman v. Arave, 236 F.3d 523, 540 (9th Cir.2001)). If the jury would have found the relevant aggravating factors beyond a reasonable doubt, an Apprendi violation is harmless. See Butler, 528 F.3d at 648-49. On the other hand, a habeas court must grant relief if it is in "grave doubt" as to whether a jury would have found the relevant aggravating factors. See id. (internal quotation marks omitted).

According to the October 31, 1997 Probation Officer Report and Recommendation, as a juvenile petitioner was convicted of cruelty to animals, possession of cocaine, assault, motor vehicle theft and first degree burglary. CT 680-82. As a juvenile petitioner had violated parole and probation and twice escaped from his place of custody. Id.

As an adult petitioner and three other men perpetrated a home invasion robbery. The victims were a family familiar to petitioner after they had invited him into their home on several occasions. Petitioner and his codefendants planned the robbery to obtain the contents of

17

a safe they knew was located at the residence.  The men broke through the home's locked door

brandishing and pointing weapons at the inhabitants including a 17 month old child.  A few

months after the home invasion robbery, petitioner shot the deceased victim in the back of the

head at point blank range during a drug deal and then attempted to steal the drug money.  After

the home invasion robbery and the murder, but prior to his arrest, petitioner was convicted of

carrying a loaded firearm in a public place.  Id. at 682.

Here, there is no question that a jury would have found all the aggravating factors

beyond a reasonable doubt.  Shooting the deceased victim in the back of the head at point blank

range clearly involved a high degree of cruelty and viciousness.  The home invasion robbery was

planned and executed in a sophisticated and professional manner.  Petitioner and his co-

defendants, motivated by their knowledge of the victim's safe, formulated a plan to break into

the residence, armed themselves, concealed their identities, took control of the occupants, forced

one of them to open the safe and fled within a short period of time.  Perpetrating a violent home

invasion robbery and murdering a man by shooting him at point blank range in the back of the

head is violent conduct which indicates petitioner is a danger to society.  Perhaps most certainly

and easily proven beyond a reasonable doubt is that petitioner had sustained prior petitions in

juvenile delinquency proceedings, specifically his sustained petitions for cruelty to animals,

possession of cocaine, assault, vehicle theft and first degree burglary, and that petitioner was on

parole from the California Youth Authority when the crimes were committed and his prior

performance on parole was unsatisfactory.

Under California law, only one aggravating factor is necessary to set the upper

term as the maximum term.  See Cal. R. Ct. 4.420; People v. Cruz, 38 Cal.App.4th 427, 433 (2nd

Dist. 1995); People v. Forster, 29 Cal.App.4th 1746, 1758 (4th Dist. 1994).  Here the jury would

have found all aggravating factors.  The facts supporting each of these factors are overwhelming

and unconverted.  The trial court's imposition of an enhanced term is therefore harmless error.

See United States v. Salazar-Lopez, 506 F.3d 748, 755 (9th Cir.2007), cert. denied, --- U.S. ----,

1   128 S.Ct. 2523, 171 L.Ed.2d 803 (2008) (holding trial court's imposition of enhanced term

2   harmless because trial court relied on a fact supported by evidence which was "overwhelming

3   and uncontroverted") (internal quotation marks and citation omitted); United States v. Zepeda-

4   Martinez, 470 F.3d 909, 913 (9th Cir.2006) (holding trial court's imposition of enhanced term

5   harmless because trial court relied on a fact supported by "overwhelming and uncontroverted

6   evidence"); Fennen v. Nakayema, 494 F.Supp.2d 1148, 1156 (E.D.Cal.2007) (holding trial

7   court's imposition of upper term harmless because trial court relied on a fact which was

8   undisputed at trial and "the same result would have obtained had a jury been asked to find this

9   fact").

10          Petitioner therefore is not entitled to habeas relief on his claim concerning

11  imposition of an upper term.

12          To the extent that petitioner is arguing that the trial court violated federal law by

13  imposing consecutive sentences, as opposed to the imposition of an upper term, such a claim is

14  beyond the scope of federal habeas review.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507

15  (9th Cir.1994) ("The decision whether to impose sentences concurrently or consecutively is a

16  matter of state criminal procedure and is not within the purview of federal habeas corpus.");

17  accord Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir.2002) ("Because the trial court actually had

18  *absolute discretion* to impose either consecutive or concurrent sentences[,] ... neither an alleged

19  abuse of discretion by the trial court in choosing consecutive sentences, nor the trial court's

20  alleged failure to list reasons for imposing consecutive sentences, can form the basis for federal

21  habeas relief.") (italics in original).

22  VI.    CONCLUSION

23          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a

24  writ of habeas corpus be denied.

25          These findings and recommendations are submitted to the United States District

26  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

1    days after being served with these findings and recommendations, any party may file written

2    objections with the court and serve a copy on all parties.  Such a document should be captioned

3    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

4    shall be served and filed within ten days after service of the objections.  The parties are advised

5    that failure to file objections within the specified time may waive the right to appeal the District

6    Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

7    DATED: January 9, 2009

8                                                              <u>Charlene H. Sorrentino</u>
                                                             CHARLENE H. SORRENTINO
9                                                            UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26